******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MARK YOUNG
## (AC 40581)

Lavine, Sheldon and Norcott, Js.

*Syllabus*

Convicted, on guilty pleas, of the crimes of operating a motor vehicle while under the influence of intoxicating liquor or drugs and evading responsibility in the operation of a motor vehicle, and of previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, the defendant appealed to this court. He claimed, inter alia, that the trial court improperly denied his motion to withdraw and vacate his guilty pleas. Specifically, he claimed that there was no factual basis that he had a prior conviction for operating a motor vehicle while under the influence of intoxicating liquor or drugs to support his guilty plea to operating while under the influence as a second offender pursuant to statute (§ 14-227a [a] and [g]). *Held:*

1. The trial court did not abuse its discretion in denying the defendant's motion to withdraw and vacate his guilty pleas:

a. The trial court's plea canvass established an adequate factual basis for the defendant's guilty pleas; the state provided the court with a part B information that alleged that the defendant previously had been convicted, on a plea of nolo contendere, in Rhode Island of driving while under the influence, which the court and clerk read aloud to the defendant, and which specified the date of the prior conviction, the town in which it was entered and the name of the prior charge of which he was convicted, the defendant indicated that he understood the allegations and admitted that he was a second offender when asked by the court clerk, and the defendant agreed with the state's factual recitation in which the prosecutor expressly stated that the defendant previously had been convicted of operating under the influence in Rhode Island.

b. The defendant could not prevail in his claim that the final disposition of his Rhode Island case was not a conviction for operating while under the influence on the basis of which he could be convicted as a second offender in Connecticut: the Rhode Island statute under which the defendant was convicted defines the offense of driving under the influence as a misdemeanor, indicating that it is a criminal offense subject to criminal penalties, the Rhode Island criminal complaint indicated that the defendant was sentenced to the mandatory minimum sentence of a $100 fine, ten hours of public community restitution, a thirty day loss of his driver's license, alcohol counseling, costs, fees, and assessments, and the defendant's claim that the Rhode Island disposition should be interpreted as a plea of nolo contendere followed by probation, which, if successfully completed, would not be considered a conviction under Rhode Island law, was unavailing, as he did not prove the Rhode Island disposition resulted in the imposition of a probationary sentence on him, much less that he had completed such a sentence, and thus he never became entitled not to have his plea and resulting sentence considered a criminal conviction; moreover, the subsequent expungement of the defendant's Rhode Island conviction did not affect the trial court's consideration of that conviction for the purpose of imposing an enhanced penalty on him, as the relevant time for sentence enhancement purposes was the time of the defendant's criminal conduct in Connecticut in March, 2016, and at that time the Rhode Island conviction had not been expunged.

c. The defendant's claims that the trial court erred because insufficient evidence was presented to that court at the time of his guilty pleas to establish that the essential elements of the Rhode Island statute under which he was convicted were substantially similar to those of the Connecticut statute, § 14-227a, and that the trial court erred by never making such a finding were unavailing; even though the court was under no duty to question the similarity of the two statutes without a challenge from the defendant that they were dissimilar, the court properly found that the essential elements of the two statutes were substantially the

same at the hearing on the defendant's motion to withdraw his guilty pleas, as the essential elements of the two statutes both required that the accused operate a motor vehicle while under the influence of intoxicating liquor or drugs, and the level of blood alcohol content at or above which a diver's operation of a motor vehicle is criminalized is identical under both statutes, and the court properly rejected the defendant's claims that the statutes were dissimilar on the basis of their definitions of operation and motor vehicle, and the lack of a pretrial alcohol education program under the Rhode Island statute.

2. The trial court imposed an illegal sentence on the defendant for operating a motor vehicle while under the influence as a second offender: although this court rejected the defendant's claim that the trial court relied on materially inaccurate information during sentencing, the three year sentence imposed for operating a motor vehicle while under the influence as a second offender exceeded the statutory maximum prescribed by law of two years of incarceration.

Argued September 17, 2018—officially released January 1, 2019

*Procedural History*

Two part information charging the defendant, in the first part, with the crimes of operating a motor vehicle while under the influence of intoxicating liquor or drugs and evading responsibility in the operation of a motor vehicle, and with speeding and operating a motor vehicle without minimum insurance, and, in the second part, with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, brought to the Superior Court in the judicial district of Windham, where the defendant was presented to the court, *J. Fischer, J.*, on guilty pleas to the charges of operating a motor vehicle while under the influence of intoxicating liquor or drugs and evading responsibility in the operation of a motor vehicle, and to previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs; judgment of guilty in accordance with the pleas; thereafter, the state entered a nolle prosequi as to the charges of speeding and operating a motor vehicle without minimum insurance; subsequently, the court denied the defendant's motion to withdraw and vacate his guilty pleas, and the defendant appealed to this court. *Reversed in part; further proceedings*.

*Jonathan R. Sills*, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom were *Bonnie R. Bentley*, senior assistant state's attorney, and, on the brief, *Anne F. Mahoney*, state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Mark Young, appeals from the judgment of conviction rendered after his guilty pleas to charges of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) and evading responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) (3), and to previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (g). The defendant claims that: (1) the court abused its discretion by denying his motion to withdraw and vacate guilty pleas pursuant to Practice Book §§ 39-26 and 39-27 because there was no factual basis for his plea of guilty to § 14-227a (a) and (g) for operating a motor vehicle while under the influence as a second offender; and (2) the court imposed an illegal sentence upon him for operating a motor vehicle while under the influence as a second offender that exceeded the statutory maximum for that offense, and did so in an illegal manner because it relied on materially inaccurate information concerning his criminal record. We affirm the judgment of the trial court in denying the defendant's motion to withdraw, but conclude that the sentence imposed on him exceeds the statutory maximum for the offense of operating a motor vehicle while under the influence as a second offender. Accordingly, we vacate the defendant's sentences on all charges and remand this case to the trial court for resentencing under the terms of the original plea agreement, in accordance with the law.

The following facts and procedural history are relevant to our resolution of the defendant's claims. On March 24, 2016, the Connecticut State Police arrested the defendant for operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a), evading responsibility in the operation of a motor vehicle in violation of § 14-224 (b) (3),[1] speeding in violation of General Statutes § 14-219 (c) (2)[2] and operating a motor vehicle without minimum insurance in violation of General Statutes § 14-213b.[3] On October 11, 2016, the state filed a part B Information pursuant to Practice Book § 36-14,[4] alleging that "[o]n . . . [October 19, 2011], in the [Rhode Island] Superior Court . . . [in] Providence, the defendant . . . was convicted of the offense of driving under the influence in violation of . . . [Rhode Island] General Laws." At a hearing before the trial court on that same date, the defendant indicated that he wished to withdraw his prior pleas of not guilty and enter pleas of guilty under an agreement with the state. The following exchange ensued:

"The Court: Okay. You understand that the prosecutors here in Danielson Superior Court charge that you've been formerly convicted, having committed the offense

of operating—driving under the influence on October, 19, 2011, in Rhode Island Superior Court in Providence in violation of the Rhode Island general statutes. You understand that.

"The Defendant: Yes.

"The Court: Okay.

"The Clerk: Mark Young, on or about March 24th of 2016, you're charged with operating under the influence in violation of 14-227a. How do you plead, guilty or not guilty?

"The Defendant: Guilty.

"The Clerk: And on that charge, you're being charged by the second part information as a subsequent offender for operating under the influence in that you were previously convicted of this charge in Rhode Island Superior Court on October 19, 2011. To being a second offender for operating under the influence how do you plead, guilty or not guilty?

"The Defendant: Guilty.

"The Clerk: Anything else?

"[The Prosecutor]: Evading.

"The Clerk: And on or about March 24 of 2016, you're charged with evading responsibility in violation of § 14-224 (b) (3). How do you plead, guilty or not guilty?

"The Defendant: Guilty."

The state then recited the following facts regarding the incident that led to the defendant's arrest: "On March 24, 2016, in the late evening hours, this defendant was clocked at a hundred and three miles per hour in a fifty mile an hour zone on Route 32 in Windham. He was pulled over. [The] [o]fficer detected an odor of alcohol. When he spoke with this defendant, who had originally switched places with his passenger, but then admitted that he was actually the driver—[he] failed to perform [the] standard field sobriety test; admitted consuming alcohol; [and] refused chemical tests. It was learned during this time that the defendant had been involved just a short time earlier in a motor vehicle incident where he struck another vehicle from behind causing minor damage, no injuries, but then fled the scene. We have an agreement in this matter. I would note that he had previously been convicted of operating under the influence in Rhode Island in 2011." The court proceeded with the plea canvass, during which it asked the defendant, "And you heard the state's attorney recite the facts which led to your arrest on the date in question; also a prior conviction. Is that all pretty much what happened?" The defendant answered in the affirmative.

The court accepted the pleas and the state informed the court that the plea agreement called for "a total

effective sentence of three years, execution suspended after five months—120 days of which are the mandatory minimum for . . . operating under the influence—two years' probation and a $1,000 fine with numerous special conditions . . . ." The court then set a date for sentencing and ordered a presentence investigation. At the next scheduled court date on December 14, 2016, new counsel for the defendant entered his appearance and filed a motion to withdraw the guilty pleas the defendant had entered on October 11, 2016.

In his motion to withdraw, the defendant argued that there was no factual basis for his guilty plea to the charge of operating while under the influence as a second offender, as alleged in the part B information, because (1) his 2011 Rhode Island case did not result in a conviction, (2) even if his Rhode Island case did result in a conviction, that conviction was expunged on December 19, 2016, between the date of his guilty pleas in this case and the date of sentencing, so that it could no longer be considered a conviction for sentence enhancement purposes under General Statutes § 14-227a (g), and (3) the essential elements of operating under the influence while under the Rhode Island statute under which he was allegedly convicted, Rhode Island General Laws § 31-27-2,[5] were not substantially the same as those of § 14-227a (a) (1) or (2), as required for a conviction as a second offender based upon a prior out-of-state conviction pursuant to § 14-227a (g).[6]

After a hearing on the motion to withdraw, the court found that (1) the disposition of the defendant's 2011 Rhode Island case was in fact a conviction, (2) the later expungement of the defendant's Rhode Island conviction did not negate the fact that he had a prior conviction for operating while under the influence at the time of the conduct underlying his present conviction, and (3) the essential elements of the statute under which the defendant was convicted in Rhode Island, § 31-27-2, are substantially the same as those of § 14-227a (a) (1) and (2).[7] Accordingly, the court denied the defendant's motion to withdraw. On June 26, 2017, the court sentenced the defendant as follows: on the charge of operating a motor vehicle while under the influence of liquor or drugs as a second offender, the defendant was sentenced to a term of three years of incarceration, execution suspended after five months, 120 days of which was a mandatory minimum, followed by two years of probation; and on the charge of evading responsibility, he was sentenced to a concurrent term of one year incarceration, execution suspended after thirty days, followed by two years of probation.[8] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court improperly denied his motion to withdraw because his guilty plea to operating a motor vehicle while under the influ-

ence as a second offender was not supported by a factual basis, and thus it was not entered voluntarily or intelligently or in compliance with the rules of practice. Specifically, he contends that there was no factual basis that he had a prior conviction for operating while under the influence to support his guilty plea to operating while under the influence as a second offender in violation of § 14-227a (a) and (g). We disagree.

"As a preliminary matter, we set forth the applicable standard of review. It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . .

"Motions to withdraw guilty pleas are governed by Practice Book §§ 39-26 and 39-27. Practice Book § 39-26 provides in relevant part: A defendant may withdraw his . . . plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his plea upon *proof* of one of the grounds in [Practice Book §] 39-27. . . . We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea." (Emphasis in original; citation omitted; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 836–37, 189 A.3d 1215 (2018).

"Furthermore, in assessing the adequacy of the trial court's consideration of a motion to withdraw a guilty plea, we do not examine the dialogue between defense counsel and the trial court . . . in isolation but, rather, evaluate it in light of other relevant factors, such as the thoroughness of the initial plea canvass." (Internal quotation marks omitted.) Id., 838.

Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . . (5) there was no factual basis for the plea . . . ." "A factual basis exists where the facts before the court are sufficient to establish each and every element of the crime charged." *State* v. *Pena,* 16 Conn. App. 518, 523, 548 A.2d 445, cert. denied, 209 Conn. 830, 552 A.2d

1217 (1988). "In determining whether a factual basis exists, the court may consider the facts recited by the state's attorney as well as any other facts properly submitted to the court which support a conviction." Id. Moreover, "[a] court is permitted to rely on a defendant's responses during a plea canvass." *State* v. *Hanson*, 117 Conn. App. 436, 449, 979 A.2d 576 (2009), cert. denied, 295 Conn. 907, 989 A.2d 604 (2010), cert. denied, 562 U.S. 986, 131 S. Ct. 425, 178 L. Ed. 2d. 331 (2010). "The [trial] court is under no constitutionally imposed duty to establish a factual basis for a guilty plea prior to its acceptance unless the [trial] judge is put on notice that there may be some need for such an inquiry . . . A factual basis inquiry . . . is merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent." (Citations omitted; internal quotation marks omitted.) *Paulsen* v. *Manson*, 203 Conn. 484, 490–91, 525 A.2d 1315 (1987).

"[T]he constitutional stricture that a plea of guilty must be made knowingly and voluntarily . . . requires not only that there be a voluntary waiver during a plea canvass of the right to a jury trial, the right of confrontation and the right against self-incrimination, but also that the defendant must be aware of and have an understanding of all of the elements of the crime or crimes with which he is charged. . . . [T]he plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." (Internal quotation marks omitted.) *State* v. *Heyliger*, 114 Conn. App. 193, 197, 969 A.2d 194 (2009).

The purpose of establishing a factual basis for a defendant's guilty plea is to ensure that he has notice of the charges to which he is pleading. To establish a factual basis for the defendant's plea to operating a motor vehicle while under the influence as a second offender, the state provided the court with the part B information alleging his prior conviction, which the court and its clerk read aloud to the defendant, specifying the date of his prior conviction, the town in which the conviction was entered, and the name of the prior charge of which he was convicted, to wit: "driving under the influence." After being informed of these allegations, the defendant indicated to the court that he understood the allegations and was pleading guilty on the basis of them. He admitted that he was a second offender when he was so asked by the court clerk, and agreed to the state's factual recitation, in which the prosecutor expressly stated that he had previously been convicted of operating while under the influence in Rhode Island. The detail in the part B information that was brought to the defendant's attention three times during his plea canvass was sufficient to give the defendant notice of the allegations concerning his prior con-

viction, and thus to ensure that his plea to the part B information was voluntary and intelligent.

Although the plea canvass alone furnished an adequate basis for the court's conclusion that his plea to the part B information was supported by a sufficient factual basis for the denial of his motion to withdraw, the court heard the defendant fully on his motion and made detailed factual findings as to each claim presented in that motion. Because he reasserts those claims on appeal, we address them each in turn.

A

First, the defendant claims that the final disposition of his Rhode Island case was not a conviction for operating while under the influence on the basis of which he could be convicted as a second offender in Connecticut. Specifically, he argues that (1) the Rhode Island criminal complaint is unclear as to the nature of his final disposition, making it impossible to determine if that case actually resulted in a conviction, (2) under his Rhode Island disposition, which was ordered after he entered a plea of nolo contendere, he was required to complete several special conditions, suggesting that he must have been placed on probation in order for those conditions to be monitored, and thereby raising the possibility that, upon successful completion of his probation, he may have been entitled not to have his disposition considered a conviction under Rhode Island law, and (3) the record of his alleged Rhode Island conviction was expunged after he pleaded guilty to the charges in Connecticut, but before he was sentenced on those pleas, assertedly making the expunged conviction unusable as a prior conviction under § 14-227a (g). We do not agree.

The following additional facts are necessary for our disposition of these claims. In support of his motion to withdraw, the defendant submitted a copy of the criminal complaint from the Rhode Island District Court in Providence to which he had pleaded nolo contendere on October 19, 2011. The court examined that document at the hearing on the motion to withdraw. The document indicates that the defendant was initially charged with one count of violating "[Rhode Island] General Laws § 31-27-2 D1, DUI/Drugs/Alcohol/1st Offense-B.A.C. unknown," but later, on October 19, 2011, that initial charge was "amended to .08" and a "nolo plea" was entered. Under the section of the form titled "sentence imposed," the following handwritten entry appears: "$100, Loss—30 day, CS—10 hours, alcohol counseling, costs, fees, assessments." In its findings of fact and conclusions of law, the court found that the court's disposition in Rhode Island constituted a conviction for operating while under the influence in violation of § 31-27-2 because "there's a hundred dollar fine based on what I see here. It provides for a jail sentence. That's all the same as here. And so there was a conviction

. . . ." The court further found that the expungement of that conviction came after the date of the defendant's challenged guilty plea in Connecticut. Therefore, it found that the expungement did not affect the availability of the defendant's prior conviction as a valid basis for sentencing him as a second offender. Finally, the court concluded that the essential elements of the Rhode Island statute under which he was previously convicted were substantially the same as the essential elements of § 14-227a. Accordingly, the court denied the defendant's motion to withdraw.

The defendant first contends that the trial court erred in finding that his plea of nolo contendere in Rhode Island was a conviction because the criminal complaint he proffered to the court was unclear as to the sentence he received for that offense. As an initial matter, we note that "our appellate courts have determined that the trial court's conclusions as to the meaning and effect of documents are best characterized as conclusions of law and are therefore subject to plenary review." *State v. Tenay*, 156 Conn. App. 792, 809–10 n.11, 114 A.3d 931 (2015). Rhode Island General Laws § 31-27-2, titled "Driving under influence of liquor or drugs," provides in relevant part: "(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor . . . shall be guilty of a misdemeanor . . . .

"(b) (1) Any person charged under subsection (a), whose blood alcohol concentration is eight one-hundredths of one percent (.08%) . . . shall be guilty of violating subsection (a) . . . .

"(d) (1) (i) Every person found to have violated subsection (b) (1) shall be sentenced as follows: for a first violation whose blood alcohol concentration is eight one-hundredths of one percent (.08%) . . . shall be subject to a fine of not less than one hundred dollars ($100) . . . shall be required to perform ten (10) . . . hours of public community restitution, and/or shall be imprisoned for up to one year . . . and his or her driver's license shall be suspended for thirty (30) days . . . ." Section 31-27-2 (f) provides in relevant part: "(2) Persons convicted under the provisions of this chapter shall be required to attend a special course on driving while intoxicated or under the influence of a controlled substance, and/or participate in an alcohol or drug treatment program . . . ."

We first note that § 31-27-2, although appearing in the Motor Vehicle Code, defines the offense of driving while under the influence of liquor or drugs as a misdemeanor, clearly indicating that it is a criminal offense subject to criminal penalties. When comparing the sentence imposed by the Rhode Island court, as it was recorded on the defendant's criminal complaint, to the criminal penalties set forth in § 31-27-2, it appears that the Rhode Island court gave the defendant the minimum

sentence he could have received under the statute for a first violation. Part of the handwritten entry on the complaint reads "Loss—30," which can reasonably be interpreted to mean loss of driver's license for 30 days, corresponding to the mandatory minimum license suspension required upon conviction under that statute. Another handwritten entry on the complaint reads, "CS—10," which can likewise reasonably be interpreted to mean the imposition of ten hours of public community restitution upon the defendant, with the letters "CS" signifying "community service," as public community restitution was formerly denominated under the statute before it was amended.[9] Ten hours is the minimum term of public community restitution required upon conviction under § 31-27-2 (d) (1) (i).

The defendant argues that it is not clear from reading the complaint whether the handwritten entry of "$100" on that document means the defendant received a $100 fine or some other cost imposed in connection with the case since it is not explicitly labeled as a fine or otherwise. We agree with the trial court's conclusion that the $100 in the "sentence imposed" section of the complaint was a fine because that amount is equal to the mandatory minimum fine imposable under the statute, all other mandatory minimum requirements are accounted for in other parts of the handwritten entry under "sentence imposed," and the order requiring that "costs, fees, and assessments" be paid as well would be redundant if the $100 entry reflected an order to pay court costs rather than a fine. Finally, the defendant was ordered to attend alcohol treatment, another mandatory sanction imposed on those *convicted* under the statute. Therefore, we conclude that the Rhode Island criminal complaint indicates that the defendant was sentenced to the mandatory minimum sentence of a $100 fine, ten hours of public community restitution, thirty day loss of driver's license, alcohol counseling, costs, fees, and assessments. We further conclude that nothing about this sentence suggests that the final disposition of the case was not a conviction. Rhode Island General Laws and Connecticut General Statutes both consider a plea of nolo contendere followed by the payment of a fine to be a conviction. See *State* v. *Palkimas*, 116 Conn. App. 788, 795, 977 A.2d 705 (2009) (nolo contendere plea has same effect as guilty plea); see also General Statutes § 14-1 (22) and R.I. Gen. Laws § 31-10.3-3 (11) (2010).

The defendant next argues that because the aforementioned special conditions were ordered by the court, they must have been subject to some period of probationary monitoring and supervision and, thus, that the Rhode Island disposition should be interpreted as a plea of nolo contendere followed by probation, which, if successfully completed, is not considered a conviction under Rhode Island General Laws pursuant to § 12-18-3. We conclude, however, that the defendant has not

proved that the disposition of his operating under the influence charge in Rhode Island resulted in the imposition of a probationary sentence upon him, much less that he successfully completed such a sentence, and thus he never became entitled not to have his plea and resulting sentence considered a criminal conviction.

Rhode Island General Laws § 12-18-3, provides, in relevant part: "(a) Whenever any person . . . shall plead nolo contendere, and the court places the person on probation pursuant to § 12-18-1, then upon the completion of the probationary period, and absent a violation of the terms of the probation, the plea and probation shall not constitute a conviction for any purpose. Evidence of a plea of nolo contendere followed by a period of probation, completed without violation of the terms of the probation, may not be introduced in any court proceeding, except that records may be furnished to a sentencing court following the conviction of an individual for a crime committed subsequent to the successful completion of probation on the prior offense." "Section 12–18–3 is a statutory limitation on the effects of a plea of nolo contendere followed by probation. Section 12–18–3 (a) clearly and unambiguously mandates that, when a person enters a plea of nolo contendere to a . . . charge and receives a sentence of probation, the plea and probation shall not constitute a conviction for any purpose." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Poulin*, 66 A.3d 419, 425 (R.I. 2013).

Section 31-27-2 (f) provides in relevant part: "(1) There is established an alcohol and drug safety unit within the division of motor vehicles to administer an alcohol safety action program. The program shall provide for placement and follow-up for persons who are required to pay the highway safety assessment. . . . (2) Persons convicted under the provisions of this chapter shall be required to attend a special course on driving while intoxicated or under the influence of a controlled substance, and/or participate in an alcohol or drug treatment program. . . . A copy of any violation under this section shall be forwarded by the court to the alcohol and drug safety unit. In the event that persons convicted under the provisions of this chapter fail to attend and complete the above course or treatment program, as ordered by the judge, then the person may be brought before the court, and after a hearing as to why the order of the court was not followed, may be sentenced to jail for a period not exceeding one year."

There is nothing on the face of the criminal complaint that indicates that the defendant was sentenced to a period of probation following his nolo contendere plea in Rhode Island, and the defendant presented no evidence from any source, including his own testimony, to the contrary. In addition, the fact that the court sentenced the defendant to several special conditions

is not intrinsically indicative of a probationary sentence because the statute criminalizing driving under the influence in Rhode Island creates an agency within the division of motor vehicles to supervise such conditions. Moreover, the mandatory minimum sentencing provisions in § 31-27-2 do not provide for a probationary sentence. We also note that the defendant presented no evidence that he was ever on probation in Rhode Island, much less that he satisfactorily completed such a sentence without a violation as required by § 12-18-3. In short, we conclude that the complaint does not indicate that the defendant was sentenced to probation after his nolo contendere plea in Rhode Island and, thus, that § 12-18-3 is inapplicable to his resulting conviction for driving under the influence.

Last, the defendant argues that since the Rhode Island conviction was expunged on December 19, 2016, it could no longer be used to enhance the penalty in the present case. The defendant contends that a contrary finding would bring about the unjust result of convicting him as a second offender although he had no record of a previous conviction at the time he was sentenced. We disagree.

Section 14-227a (g) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (2) for conviction of a second violation within ten years after a prior conviction for the same offense . . . (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation . . . ." "[T]he ten year rule applies to the length of time between the most recent prior *conviction* of operating under the influence and the *conduct* giving rise to the present violation of § 14-227a, not the present conviction itself." (Emphasis in original.) *State* v. *Tenay*, supra, 156 Conn. App. 799 n.5. "An interpretation of [§ 14-227a (g)] that focuses on the time of conviction rather than the time of violation could have bizarre and ineffective consequences. If eligibility for the enhanced penalty were to depend upon the timing of conviction, then two offenders who were arrested on the same day for their [second] offense and who previously on the same dates had been convicted . . . before of operating a motor vehicle while under the influence of intoxicating liquor or drugs could be subject to disparate penalties if one of the offenders were successful in strategically jockeying for a delay in his trial." (Footnote omitted.) *State* v. *Burns*, 236 Conn. 18, 26, 670 A.2d 851 (1996).

It is, therefore, irrelevant whether the defendant's Rhode Island conviction was expunged at the time of his plea, his motion to withdraw, or his sentencing. The relevant time for sentence enhancement purposes was the time of the defendant's criminal conduct, March 24, 2016. It is uncontested that the Rhode Island conviction

had not been expunged by that time. We, thus, conclude that the subsequent expungement of that conviction does not affect the court's consideration of the conviction for the purpose of imposing an enhanced penalty upon him.[10]

B

The defendant next claims that the court erred because insufficient evidence was presented to the trial court at the time of his guilty pleas to establish that the essential elements of Rhode Island General Laws § 31-27-2 are substantially the same as those of § 14-227a (a), and thus that a prior conviction under that statute can properly be used as a basis for counting him as a second offender in Connecticut. Because such a finding was never made at the time of his guilty plea, the defendant claims that his plea of guilty as a second offender lacks a factual basis. We disagree.

The defendant first argues that the part B information and the language used by the state in the plea canvass to establish the factual basis for his alleged prior conviction were insufficient because they lacked the specificity required for the court to find that the essential elements of the two statutes were substantially the same. He argues that the part B information should have referenced a specific Rhode Island statutory provision and subsection of such section to enable the court to make the requisite comparison. He further argues that the trial court failed to make that comparison or to place such a finding on the record.

As our Supreme Court stated in *Paulsen*, however, "[t]he [trial] court is under no constitutionally imposed duty to establish a factual basis for a guilty plea prior to its acceptance unless the [trial] judge is put on notice that there may be some need for such an inquiry . . . A factual basis inquiry . . . is merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent." (Citations omitted; internal quotation marks omitted.) *Paulsen* v. *Mansen*, supra, 203 Conn 490–91. In *State* v. *Greene*, 274 Conn. 134, 149, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d. 988 (2006), the defendant challenged the adequacy of the factual basis of his pleas that were subsequently used against him in a trial with similar factual allegations. Our Supreme Court concluded that the trial court had no knowledge at the time it accepted the pleas that the state would seek to introduce them at a subsequent trial, so it was under no duty to question the adequacy of the factual basis. Id. Here, as in *Greene*, the trial court was under no duty to question the similarity of the two statutes at issue without a challenge from the defendant that they were dissimilar. This is consistent with the purpose of establishing a factual basis for the plea, which is to put the defendant on notice of the charges to which he is pleading so that he does so voluntarily and intelligently.

The court, however, did make a finding that the essential elements of the two statutes were substantially the same at the hearing on the motion to withdraw. The defendant argued that such elements were not substantially the same because (1) the definitions of "operation" in the two states are not identical, (2) the definitions of "motor vehicle" in the two states are not identical, and (3) Rhode Island does not offer an alcohol education program for first offenders. We disagree.

"The issue of whether the elements of the [Rhode Island] and Connecticut statutes under which the defendant was convicted were substantially the same calls for the comparison and interpretation of those statutes, which is a question of law." *State* v. *Commins*, 276 Conn. 503, 513, 886 A.2d 824 (2005), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). Therefore, our review is plenary. *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002). Section 14-227a (g) prescribes an enhanced penalty for operating a motor vehicle while under the influence for any person who has a prior "conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) or subsection (a) of this section . . . ."

Section 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol by weight . . . ." Rhode Island General Laws § 31-27-2 provides: "(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor . . . shall be guilty of a misdemeanor . . . . (b)(1) Any person charged under subsection (a) . . . whose blood alcohol concentration is eight one-hundredths of one percent (.08%) or more by weight . . . shall be guilty of violating subsection (a) . . . . Proof of guilt under this section may also be based on evidence that the person charged was under the influence of intoxicating liquor, drugs, toluene, or any controlled substance defined in chapter 28 of title 21, or any combination of these, to a degree that rendered the person incapable of safely operating a vehicle. . . ." Read together, the essential elements of § 14-227a (a) (1) and (2) and the Rhode Island statutes are not only substantially the same, they are identical, namely, that the accused must (1) operate a motor vehicle (2) while he is under the influence of intoxicating liquor or drugs. Under both statutes, the identical level of blood alcohol

content at or above which a driver's operation of a motor vehicle is criminalized is .08 percent.

The defendant first argues that these essential elements are not substantially the same because the definition of operation differs between the two statutes. Specifically, he argues that Connecticut law requires an intentional act to prove operation, where the Rhode Island's statute is silent as to the mens rea required, which creates the potential that certain conduct could be considered operation under Rhode Island law that would not be considered operation in Connecticut.

"Our case law provides that [a] person operates a motor vehicle within the meaning of [§ 14-227a], when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." (Internal quotation marks omitted.) *State* v. *Bereis*, 117 Conn. App. 360, 366, 978 A.2d 1122 (2009). "Nothing in our definition of operation requires the vehicle to be in motion or its motor to be running. . . . The act of inserting the key into the ignition and the act of turning the key within the ignition are preliminary to starting the vehicle's motor. Each act, in sequence with other steps, will set in motion the motive power of the vehicle. . . . Each act therefore constitutes operation of the vehicle under the definition set forth in [*State* v.] *Swift*, [125 Conn. 399, 6 A.2d 359 (1939)]. See, e.g., *State* v. *Jones*, 2 Conn. Cir. Ct. 605, 607, 203 A.2d 447 (1964) (attempting to start engine constitutes operation, even if motor fails to catch)." (Citations omitted; internal quotation marks omitted.) *State* v. *Haight*, 279 Conn. 546, 552–53, 903 A.2d 217 (2006).

Rhode Island General Laws § 31-1-17 (d) provides that the term " '[o]perator' means every person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle . . . ." In Rhode Island, operating a motor vehicle has been interpreted as requiring more "than simple possession of a motor vehicle." *State* v. *Capuano*, 591 A.2d 35, 37 (R.I. 1991). In *Capuano*, the Rhode Island Supreme Court found that a defendant who was "sitting on a motorcycle with its engine running, headlight on, and kickstand up" did not operate a motor vehicle for the purposes of § 31-27-2 . Id., 36–37.

The omission of language clarifying the intent requirement in the Rhode Island statute does not render the two statutes dissimilar because Rhode Island does not criminalize conduct that is less active or dangerous if performed while under the influence than that which Connecticut defines as operation. Indeed, the conduct found insufficient to constitute operation in Rhode Island in *Capuano* would likely be considered an act which alone or in sequence would set in motion the

motive power of a vehicle, as required to establish operation in Connecticut. Therefore, we conclude that the essential element of operation is substantially the same under both statutes.

The defendant next argues that the essential elements of the statutes at issue are not substantially the same because the definitions of motor vehicle are not identical in the two statutes. Specifically, the defendant notes that certain types of vehicles are excluded from the definition of motor vehicle under Connecticut law that are not expressly excluded from the parallel definition under Rhode Island law. General Statutes § 14-1 defines motor vehicle as: "(58) any vehicle propelled or drawn by any nonmuscular power, except aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by persons with physical disabilities at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf-cart-type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors, farm implements, such vehicles as run only on rails or tracks, self-propelled snow plows, snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, motor-driven cycles as defined in section 14-286, special mobile equipment as defined in section 14-165, mini-motorcycles, as defined in section 14-289j, electric bicycles and any other vehicle not suitable for operation on a highway."

Rhode Island General Laws § 31-1-3 defines motor vehicle as "every vehicle that is self-propelled or propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except vehicles moved exclusively by human power, an EPAMD and electric motorized bicycles as defined in subsection (g) of this section, and motorized wheelchairs." Both statutes require that the motor vehicle be propelled by some force other than human power and, although the statutes vary in their exemptions of certain vehicles, the overall effect of the definitions is to criminalize the operation of automotive vehicles that could pose a danger to the public if operated while under the influence of liquor or drugs. Therefore, we conclude that the definitions of motor vehicle, which are a common essential element of both statutes, are substantially the same.

The defendant's final argument, that Rhode Island's lack of a pretrial alcohol education program renders the statutes at issue dissimilar, is also unpersuasive. "General Statutes § 54-56g establishes a pretrial alcohol education program [in lieu of a possible conviction for

operating a motor vehicle while under the influence of intoxicating liquor] for persons charged with a violation of [General Statutes] § 14-227a. Applications for participation in this program may be granted or denied at the discretion of the trial court." (Internal quotation marks omitted.) *State* v. *DiPaolo*, 88 Conn. App. 53, 55 n. 1, 868 A.2d 98, cert. denied, 273 Conn. 935, 875 A.2d 544 (2005). The existence of an alcohol education program is irrelevant to the similarity of the essential elements of the offense of operating under the influence. The discretionary pretrial diversion program impacts the disposition of the matter and is, therefore, unrelated to the essential elements of the offense itself. Therefore, we also reject this claim.

For the foregoing reasons, we conclude that the Rhode Island conviction was a qualifying conviction for the purposes of sentence enhancement under § 14-227a (g). Consequently, we conclude that the court did not abuse its discretion in denying the defendant's motion to withdraw and vacate because it correctly applied the law and reasonably could have reached the conclusion that it did.

II

The defendant next claims that the manner in which he was sentenced was illegal and that the three year sentence imposed upon him for operating a motor vehicle while under the influence as a second offender was illegal. Specifically, he claims that the court relied on materially inaccurate information during sentencing, that he had been previously convicted of a substantially similar offense, and that his sentence on the charge of operating while under the influence as a second offender exceeds the maximum two year sentence allowed by law. We agree that the sentence imposed exceeds the statutory maximum. The following additional facts are necessary to our review of these claims.

On June 26, 2017, the court sentenced the defendant as follows: on the charge of operating a motor vehicle while under the influence as a second offender, the defendant was sentenced to a term of three years of incarceration, execution suspended after five months, 120 days of which is a mandatory minimum, followed by two years of probation, and on the charge of evading responsibility, he was sentenced to a term of one year incarceration, execution suspended after thirty days, followed by two years of probation. The court ordered these sentences to be served concurrently.

Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right

against double jeopardy, is ambiguous, or is internally contradictory. . . . We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to . . . § 43–22 with the judicial authority, namely, the trial court. . . . [B]oth the trial court, and this court, on appeal, have the power, at any time, to correct a sentence that is illegal. . . . [T]he issue is one of law, and we afford it plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Ruiz*, 173 Conn. App. 608, 617, 164 A.3d 837 (2017).

A

The defendant claims that his sentence was imposed in an illegal manner because the court relied on materially inaccurate information during sentencing, specifically, that the defendant had a previous conviction for a substantially similar offense. On that score, the defendant repeats the same arguments that he advanced in support of his motion to withdraw and that form the basis of his appeal from the denial of the same, namely, that his October 19, 2011 Rhode Island disposition was never a conviction and that, in the alternative, it was not a conviction at the time of sentencing because it had been expunged, and that the essential elements of the statutes are not substantially the same as required by § 14-227a (g). We again reject these claims.

"A sentence is invalid if it is imposed in an illegal manner . . . . Within the definition of sentences imposed in an illegal manner, our jurisprudence includes sentences which violate [a] defendant's right . . . to be sentenced by a judge relying on accurate information. . . . To prevail on a claim that a sentence is invalid because a sentencing court relied on inaccurate information, a defendant must show . . . that the judge relied on that information . . . . A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." (Emphasis omitted; citations omitted; internal quotation marks omitted.) *State* v. *Martin M.*, 143 Conn. App. 140, 144–45, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).

In the instant matter, it is clear that the court, in imposing sentence, relied on material information that the defendant had previously been convicted of a substantially similar offense because it sentenced the defendant on the charge of operating while under the influence as a second offender. However, we conclude that the information relied on by the court, that the defendant had been convicted of a substantially similar offense, was accurate information. As analyzed in depth in part I of this opinion, the disposition in the 2011 Rhode Island case was a conviction for a substantially

similar offense and the subsequent expungement did not affect the availability of that conviction for sentencing enhancement purposes because it was in effect at the relevant time of the defendant's criminal conduct in this case. Therefore, the defendant's claim that he was sentenced in an illegal manner must also fail.

B

Finally, the defendant claims that the three year sentence imposed by the trial court for operating a motor vehicle while under the influence as a second offender exceeded the statutory maximum prescribed by law. The state concedes that the challenged sentence was illegal. We agree.

Section 14-227a (g) provides, in relevant part, that any person who violates subsection (a) shall "(2) for conviction of a second violation within ten years after a prior conviction for the same offense  . . .  (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation  . . . ." Section 14-224 (g) (2) provides: "Any person who violates the provisions of subdivision (3) of subsection (b) or subsection (c) of this section shall be fined not less than seventy-five dollars or more than six hundred dollars or be imprisoned not more than one year or be both fined and imprisoned, and for any subsequent offense shall be fined not less than one hundred dollars or more than one thousand dollars or be imprisoned not more than one year or be both fined and imprisoned." Although the total effective sentence as agreed upon by both parties would be legal if the maximum sentence were given for both operating while under the influence as a second offender and evading responsibility, respectively, to run consecutively, the current sentence of three years of incarceration on the § 14-227a charge exceeds the maximum allowable sentence of two years of incarceration. Because the defendant's original plea agreement included an aggregate sentence for both operating while under the influence as a second offender and evading responsibility, although we find error only as to the former, we must vacate the sentences as to both charges and remand for resentencing pursuant to the aggregate package theory. See *State* v. *Raucci*, 21 Conn. App. 557, 562, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990) (proper remedy when defendant appeals punishment pursuant to multicount conviction is to vacate sentence in its entirety). Accordingly, we vacate the defendant's sentences on all charges and remand the case to the trial court for resentencing under the terms of the original plea agreement and in accordance with law.

The judgment is reversed only as to the defendant's sentence and the case is remanded for further proceedings according to law. The judgment is affirmed in all

other respects.

In this opinion the other judges concurred.

[1] General Statutes § 14-224 provides in relevant part: "(b) (3) Each operator of a motor vehicle who is knowingly involved in an accident that causes . . . damage to property shall at once stop and render such assistance as may be needed and shall give such operator's name, address and operator's license number and registration number to the owner of the . . . damaged property . . . .

* * *

"(g) (2) Any person who violates the provisions of subdivision (3) of subsection (b) . . . shall be fined not less than seventy-five dollars or more than six hundred dollars or be imprisoned not more than one year or be both fined and imprisoned . . . ."

[2] General Statutes § 14-219 (c) provides in relevant part: "Any person who . . . operates a motor vehicle . . . (2) on any other highway at a rate of speed greater than sixty miles per hour but not greater than eighty-five miles per hour, shall be fined not less than one hundred dollars nor more than one hundred fifty dollars . . . ."

[3] General Statutes § 14-213b provides in relevant part: "(a) No owner of any private passenger motor vehicle . . . registered or required to be registered in this state may operate . . . such vehicle without the security required by section 38a-371 or with security insufficient to meet the minimum requirements of said section, or without any other security requirements imposed by law, as the case may be. . . .

"(b) Any person convicted of violating any provision of subsection (a) of this section shall be fined not less than one hundred dollars or more than one thousand dollars . . . ."

[4] "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein such conviction was obtained and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Section 36-13." Practice Book § 36-14.

[5] Hereinafter, unless otherwise indicated, all references to § 31-27-2 in this opinion are to the 2010 revision of the statute.

[6] The motion to withdraw included a request to withdraw guilty pleas to both operating a motor vehicle while under the influence as a second offender and evading responsibility in the operation of a motor vehicle. No separate grounds were raised in the motion to withdraw with respect to evading responsibility, but both charges were included in the original plea agreement that was negotiated with the state and, thus, both were also included in the motion to withdraw.

[7] The defendant also raised a claim of ineffective assistance of counsel in his motion to withdraw but abandoned that claim at the May 19, 2017 hearing on the motion.

[8] The state entered nolle prosequis on the charges of speeding in violation of § 14-219 (c) (2) and operating a motor vehicle without minimum insurance in violation of § 14-213b at sentencing on June 26, 2017.

[9] Rhode Island General Laws § 31-27-21 provides: "The general assembly declares that the words 'public community service' which appear throughout this chapter shall now be substituted with and referred to as 'public community restitution.' "

[10] We note in passing that nothing about the fact that the conviction was expunged indicates that the Rhode Island disposition was not a conviction because Rhode Island provides for expungement for "[a]ny person who is a first offender . . . for a felony or misdemeanor . . . provided, that no person who has been convicted of a crime of violence shall have his or her records and records of conviction expunged; and provided, that all outstanding court-imposed or court-related fees, fines, costs, assessments, charges, and/or any other monetary obligations have been paid, unless such amounts are reduced or waived by order of the court." R.I. Gen. Laws § 12-1.3-2 (a) (2010).