******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* YUSEF L.*
## (AC 43612)

Elgo, Cradle and DiPentima, Js.

*Syllabus*

Convicted, on guilty pleas of the crimes of violation of a protective order and strangulation in the second degree and on an admission to violation of probation, the defendant appealed to this court, claiming that the trial court improperly denied his motion to withdraw his guilty pleas because they were not made knowingly, voluntarily, and intelligently. *Held*:

1. The defendant could not prevail on his claim that the trial court improperly denied his motion to withdraw his guilty pleas because it failed to determine whether he fully understood the maximum possible sentence that could result from consecutive sentences: the court informed the defendant that, if he were to plead guilty, he could receive up to five years in prison and five years of probation for each charge, and, although the defendant gave one word responses, they still represented a clear communication from the defendant to the court that he understood the maximum possible sentence before him; moreover, the defendant had prior experience with criminal proceedings, and, by his own admission, received adequate representation by counsel; accordingly, the court substantially complied with the applicable rule of practice (§ 39-19 (4)).

2. The trial court properly rejected the defendant's unpreserved claims seeking review pursuant to *State* v. *Golding* (213 Conn. 233), which challenged the court's denial of his motion to withdraw his guilty pleas:
   a. The defendant could not prevail on his claim that the trial court incorrectly advised him that a mandatory minimum sentence applied: although the defendant was correct that no mandatory minimum sentence applied with respect to the charges of strangulation in the second degree and violation of a protective order, his claim failed under the third prong of *Golding* because no constitutional violation occurred; the court never informed the defendant of the application of any mandatory minimum sentence, rather, the court explained the structure of the sentence to be imposed, and the record indicated that the defendant understood that explanation; thus, because the court did not misinform the defendant of a mandatory minimum sentence, the defendant's due process rights were not implicated.
   b. The defendant's claim that the trial court failed to determine whether he fully understood that he had the right to plead not guilty and the right to the assistance of counsel was unavailing: the court explicitly informed the defendant that if he did not plead guilty he would proceed to trial, at which time he potentially could be found guilty, and the defendant indicated to the court that he understood that he had a right to plead not guilty; moreover, the defendant's familiarity with the criminal justice system supported the conclusion that he knew that he had the right to plead not guilty, and the court reasonably could have relied on the fact that the defendant was represented by counsel in all pretrial proceedings in the present case in concluding that the defendant understood the role of counsel and that he had the right to the assistance of counsel.

Argued May 25—officially released September 14, 2021

*Procedural History*

Information, in the first case, charging the defendant with violation of probation, and information, in the second case, charging the defendant with the crimes of breach of the peace in the second degree and strangulation in the second degree, and information, in the third case, charging the defendant with the crime of violation of a protective order, brought to the Superior Court in the judicial district of Waterbury, geographical area

number four, where the defendant was presented to the court, *Doyle, J.*, on an admission of guilt to violation of probation and pleas of guilty to strangulation in the second degree and violation of a protective order; thereafter, the state entered a nolle prosequi as to the charge of breach of the peace in the second degree; subsequently, the court denied the defendant's motion to withdraw and vacate his guilty pleas, and rendered judgment revoking probation and judgments of guilty in accordance with the pleas, from which the defendant appealed to this court. *Affirmed.*

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Christopher W. Iverson*, certified legal intern, with whom, on the brief, was *Michele C. Lukban*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Yusef L., appeals from the judgment revoking his probation and the judgments of conviction, rendered after his admission to a violation of his probation in violation of General Statutes § 53a-32 and after pleas of guilty, pursuant to the *Alford* doctrine,[1] of violation of a protective order in violation of General Statutes § 53a-223 and strangulation in the second degree in violation of General Statutes § 53a-64bb. On appeal, the defendant claims that the trial court improperly denied his motion to withdraw his guilty pleas because they were not made knowingly, voluntarily, and intelligently. Specifically, the defendant claims that the court (1) failed to determine whether he fully understood the maximum possible sentence that could result from consecutive sentences, (2) incorrectly advised him that a mandatory minimum sentence applied, and (3) failed to determine whether he fully understood that he had the right to plead not guilty and the right to the assistance of counsel.[2] We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. On January 11, 2019, the defendant, while represented by counsel, admitted that he violated his probation and entered guilty pleas pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to the charges of violation of a protective order and strangulation in the second degree with an agreed on sentence of "four years and two days to serve, followed by 2184 days of special parole." After conducting a plea canvass, the court, *Doyle, J.*, found that the defendant's admission and pleas were made knowingly and voluntarily, and accepted each of them. The court then ordered a presentence investigation report and continued the case for sentencing.

On January 12, 2019, the defendant sent a letter to the court seeking to withdraw his guilty pleas because he was "confused [as] to what [he] plead[ed] guilty to." On January 14, 2019, the defendant sent a second letter to the court, again stating that he wanted to withdraw his guilty pleas, and stating that he was not satisfied with the representation that he had received and that he was prepared to go trial. The court construed these letters as a motion by the defendant to withdraw his guilty pleas. On March 18, 2019, the defendant and his counsel appeared before the court. At that time, the defendant stated that he "was confused" and "didn't know what was going on" during the January 11, 2019 plea hearing. The court ordered a copy of the transcript from the January 11, 2019 hearing and informed the defendant that they would discuss its contents at a hearing on April 1, 2019.

At the April 1, 2019 hearing, the court stated to the defendant: "I reviewed the transcript [from the January

11, 2019 plea hearing] and I think it's pretty clear to me that, at the time, you understood everything that I asked you based on your responses. In the letter you seem to be more interested in just—you're not happy with the sentence, which I get, but that's not a basis for changing a plea. So what I'm inclined to do is I'll give you a copy of the transcript and I'll give you a new date to look it over." The defendant persisted in his claim that he did not understand what had happened at the January 11, 2019 plea hearing, and the court responded that the defendant would receive a copy of the transcript so that he could "tell [the court] where [he] . . . [didn't] understand . . . ."

On April 26, 2019, the defendant sent a third letter to the court, this time requesting to represent himself in future proceedings. At a hearing on May 22, 2019, concerning his request for self-representation and after a lengthy canvass of the defendant, the court found: "[T]he defendant has knowingly and intelligently waived his right to counsel . . . he wants to represent himself or get a private attorney.[3] I'm going to continue the case one month to see if he gets a private attorney . . . [then] we are going forward on [the defendant's] motion to vacate if [he] wants to pursue it, or we are going to be going to sentencing." (Footnote added.) The court also ordered that the defendant's former attorney, Christopher J. Molyneaux, act as standby counsel for the defendant if he did not retain a private attorney.

On June 26, 2019, the self-represented defendant, with standby counsel present, argued that he should be permitted to withdraw his guilty pleas because the sentence "exceed[ed] the specified agreement [to] which [he] pleaded . . . ." Specifically, the defendant stated that he understood that he was accepting five and one-half years of special parole, and that he did not agree to "shy of six years" of special parole. The defendant further argued that he should be permitted to withdraw his guilty pleas because the court never used the word " 'consecutive' " when it canvassed him with regard to the charges to which he was pleading guilty. The defendant gave no other reasons to withdraw his plea. The court denied the defendant's motion to withdraw his guilty plea, stating: "I don't think that you've provided a sufficient factual basis that requires a further evidentiary hearing. You've basically made some vague and conclusory allegations that you weren't sure about the sentence and exceeding it. It does not exceed the proposed agreement. You did not carry your burden to put forth sufficient facts that would warrant a further hearing . . . to address your motion to withdraw [your guilty plea]."

On July 9, 2019, after reviewing the presentence investigation report, the court sentenced the defendant as agreed. The defendant then appealed from the judgments of conviction, claiming that the court improperly

denied his motion to withdraw his guilty pleas. Additional facts will be set forth as necessary.

"Our standard of review for the trial court's decision on a motion to withdraw a guilty plea under Practice Book § 39-27 is abuse of discretion. . . . After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in [§ 39-27]. An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. . . .

"In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purposes of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegation of fact to be true. If such allegations furnish a basis for withdrawal of the plea under [Practice Book § 39-27] and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, then an evidentiary hearing is required. . . . We further [note] that the burden [is] on the defendant to show a plausible reason for the withdrawal." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Warner*, 165 Conn. App. 185, 191–92, 138 A.3d 463 (2016).

I

The defendant's first claim challenging the court's denial of his motion to withdraw his guilty pleas is that the court failed to determine whether he fully understood the maximum possible sentence that could result from consecutive sentences.[4] Specifically, the defendant argues that "[n]othing in the record suggests [that] [he] was aware of the actual sentencing possibilities," and that "[t]here was no substantial compliance with Practice Book § 39-19 (4)."[5] The state counters that the record shows substantial compliance with § 39-19 (4), and that the defendant was aware of the maximum possible sentence that would result from consecutive sentences. We agree with the state.

It is well established that "[a] defendant can voluntarily and understandingly waive [his] rights without literal compliance with the prophylactic safeguards of Practice Book §§ [39-19 and 39-20]. Therefore . . . precise compliance with the provisions [of §§ 39-19 and 39-20] is not constitutionally required." (Citations omitted.) *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). Accordingly, "[o]ur courts repeatedly have held that only substantial compliance is required when warning the defendant of the direct consequences of a . . . plea pursuant to . . . § 39-19 in order to ensure

that the plea is voluntary pursuant to . . . § 39-20." (Internal quotation marks omitted.) *State* v. *Hanson*, 117 Conn. App. 436, 444, 979 A.2d 576 (2009), cert. denied, 295 Conn. 907, 989 A.2d 604 (2010), cert. denied, 562 U.S. 986, 131 S. Ct. 425, 178 L. Ed. 2d 331 (2010).

"[W]hen determining whether there has been substantial compliance with Practice Book § 39-14 (4), we must conduct a two part inquiry. Our first inquiry is to determine whether the court accepted the defendant's pleas without first determining whether he was aware of and understood the maximum possible sentence to which he was exposed. . . . Next, if we conclude that the court failed to determine whether the defendant was aware of and understood the maximum possible sentence, we examine the record to determine whether, despite the court's failure, he nevertheless had actual knowledge of the maximum possible consequences of his pleas. . . . If either prong is satisfied, the pleas were accepted with substantial compliance with Practice Book § 39-19 (4)." (Citations omitted.) *State* v. *Carmelo T.*, 110 Conn. App. 543, 552–53, 955 A.2d 687, cert. denied, 289 Conn. 950, 960 A.2d 1037 (2008).

During the court's plea canvass of the defendant, the following exchange took place:

"The Court: [D]id [defense counsel] explain to you for *each* of [the] charges you could get up to five years in prison [and] five years of probation . . . ?

"The Defendant: Yes.

"The Court: Do you understand everything he explained to you about the court's offer?

"The Defendant: Yes.

"The Court: Are you satisfied with how your attorney represented you, sir?

"The Defendant: Yes.

"The Court: Counsel, did you go over all of this with your client?

"[Defense Counsel]: I did, Your Honor.

"The Court: And did he have any trouble understanding you?

"[Defense Counsel]: He did not, Your Honor." (Emphasis added.)

Our Supreme Court has held that, in the context of a plea canvass, "[a]lthough some form of meaningful dialogue is preferable to monosyllabic responses by the defendant . . . single-word responses [do not] require an automatic vacation of a guilty plea." *State* v. *Torres*, 182 Conn. 176, 179–80, 438 A.2d 46 (1980). Moreover, it is well established that a court may rely on a defendant's responses during a plea canvass in determining whether the guilty plea is knowing and voluntary. See, e.g., *State* v. *Young*, 186 Conn. App. 770, 780, 201 A.3d 439, cert.

denied, 330 Conn. 972, 200 A.3d 1151 (2019).

In the present case, as the exchange referenced reflects, the court informed the defendant that, if he were to plead guilty, he could face up to five years in prison and five years of probation for *each* charge. Furthermore, although the defendant gave one word responses, they still represented a clear communication from the defendant to the court that he understood the maximum possible sentence before him. This is especially true considering that the defendant had prior experience with criminal proceedings—prior to the charges in the present case, he had pleaded guilty to a variety of charges, including a charge of possession of narcotics—and, by his own admission, received adequate representation by counsel with respect to the maximum possible sentence that he faced in the present case. See, e.g., *State* v. *Claudio*, supra, 123 Conn. App. 293 (holding that prior experience with criminal proceedings and adequate representation by counsel are factors to be considered in determination of whether plea canvass was constitutionally sufficient); see also, e.g., *State* v. *Lage*, 141 Conn. App. 510, 524–25, 61 A.3d 581 (2013) (same). These facts, considered as a whole, demonstrate that the court correctly determined that the defendant was aware of and understood the maximum possible sentence to which he was exposed and thus, there was substantial compliance with the requirements of Practice Book § 39-19 (4).[6]

## II

We now turn to the defendant's claims that were not properly preserved. The defendant claims that the court (1) incorrectly advised him that a mandatory minimum sentence applied and (2) failed to determine whether he fully understood that he had the right to plead not guilty and the right to the assistance of counsel. The defendant acknowledges that these claims are unpreserved, and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

"Under *Golding*, a [party] can prevail on a claim of constitutional error not preserved at trial only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [party] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [party's] claim will fail. The appellate tribunal is free, therefore, to respond to a [party's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In*

*re Madison C.*, 201 Conn. App. 184, 190, 241 A.3d 756, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020).

A

The defendant's first unpreserved claim is that the court "incorrectly advised [him] that a mandatory minimum sentence was required on the two [charges] [he] was pleading [guilty] to . . . [because] [s]trangulation in the second degree and violation of a protective order have no mandatory minimums . . . [a]nd neither . . . mandates probation or special parole." According to the defendant, this claim should be reviewed under *Golding* because it is of "constitutional dimension . . . ." In response, the state argues that this claim fails under the third prong of *Golding*, because the court "never mistakenly stated that either of the defendant's two criminal charges carried a mandatory minimum sentence." We agree with the state.

It is well established that "[t]o ensure that a defendant is accorded due process . . . [a] plea must be voluntarily and intelligently entered." *State* v. *Domian*, 235 Conn. 679, 686, 668 A.2d 1333 (1996). To this end, Practice Book § 39-19 provides in relevant part that "[t]he judicial authority shall not accept [a] plea without first addressing the defendant personally and determining that he or she fully understands . . . (2) [t]he mandatory minimum sentence, if any . . . ."

The defendant is correct in his assertion that no mandatory minimum sentence applies with regard to the crimes of strangulation in the second degree and violation of a protective order. The defendant's claim fails, however, under the third prong of *Golding* because, as the record indicates, no constitutional violation occurred. In claiming that the court incorrectly advised him that a mandatory minimum sentence applied, the defendant relies on the following language employed by the court: "Right now, you're going to plead [guilty] to two class D felonies. One is strangulation in the second degree and the other is violation of a protective order. You have to, on each one, to get special parole, get on the bottom part two years and [one] day. So you're going to get two years and [one] day on each, okay, and then you're going to get the remainder in special parole." According to the defendant, this language shows that the court, "in effect . . . incorrectly advised [him] that two years and [one] day was a mandatory minimum on each felony and that just shy of three years [of] special parole was also required on the bottom part of each felony." (Emphasis omitted.) This, however, is not the case.

The record reflects that the court never informed the defendant, either explicitly or impliedly, of the application of any mandatory minimum sentence. From an examination of the context of the language referenced by the defendant, it is clear that the court was explaining

the structure of the sentence to be imposed and not the existence of a mandatory minimum sentence.[7] Moreover, the record shows that the defendant had a clear understanding of that explanation. Because the record clearly indicates that the court did not misinform the defendant of a mandatory minimum sentence, we conclude that the defendant's due process rights are not implicated and no constitutional violation exists. Accordingly, the defendant's claim fails under the third prong of *Golding*.

B

The defendant's second unpreserved claim is that the court failed to determine whether he fully understood that he had the right to plead not guilty or to persist in that plea if it already had been made, as well as the right to the assistance of counsel. According to the defendant, "there is nothing in the record that supports a finding that [he] was aware . . . that he had the right to plead not guilty . . . [or] that he had the right to the assistance of counsel at trial." The defendant further argues that the court failed to comply with Practice Book § 39-19 (5).[8] In response, the state argues that this claim fails because "the record shows that the defendant was aware of his right to plead not guilty and of his right to the assistance of counsel at trial." We agree with the state.

The due process rights of a defendant are implicated if his plea has not been voluntarily and knowingly entered. See *State* v. *Domian*, supra, 235 Conn. 686. The defendant argues that this claim qualifies for *Golding* review because the court's alleged failure to inform him of his right to plead not guilty and of his right to the assistance of counsel implicates his due process rights. The record indicates, however, that such a failure did not occur. During the court's canvass of the defendant, the following exchange took place:

"The Court: On the criminal charges, you [pleaded] [guilty] under the *Alford* doctrine. I need to make sure you understand what that means. When you do that, you're telling me that you don't agree with some or all the facts put on the record about those incidents; is that correct?

"The Defendant: Yes.

"The Court: Even though you don't agree with some or all the facts, you recognize you could be found guilty of those or some other charges. After you've thought about it and discussed it with your attorney, you, on your own, have decided it's in your best interest to accept the proposed offer *rather than risk going to trial and getting a longer sentence if you're found guilty after trial*; is that correct, sir?

"The Defendant: Yes.

"The Court: Even though you dispute the factual basis

of the pleas, once I accept them, I'll be finding you guilty. Do you understand that, sir?

"The Defendant: Yes.

"The Court: Are you entering these pleas of your own free will?

"The Defendant: Yes." (Emphasis added.)

This exchange demonstrates that the court made it clear to the defendant that he had the right to plead not guilty. The court explicitly stated that if the defendant did not plead guilty he would proceed to trial, at which time he potentially could be found guilty. Moreover, the defendant, through his responses, indicated that he understood that he had the right to plead not guilty. It is well established that "[a] court is permitted to rely on a defendant's responses during a plea canvass." (Internal quotation marks omitted.) *State* v. *Young*, supra, 186 Conn. App. 780.

We again note the undisputed fact that the defendant was familiar with the criminal justice system. As this court has held, prior experience with criminal proceedings is a factor to be considered in determining whether a defendant's guilty plea is knowing and voluntary. See, e.g., *State* v. *Claudio*, supra, 123 Conn. App. 293. The defendant's familiarity with the criminal justice system further supports the conclusion that he knew that he had the right to plead not guilty. He also conceded that he had never gone to trial on a criminal charge, indicating that he understood that he had right to plead not guilty and to proceed to trial.

Additionally, the court reasonably could have relied on the defendant's familiarity with the criminal justice system in determining that he understood that he had the right to the assistance of counsel. The defendant stated, in reference to his prior criminal charges while being canvassed by the court regarding his request to represent himself, that he had "[o]nce in [his] life" been represented by an attorney from the public defender's office, and had been represented by private counsel "[a] majority of the time," indicating that he clearly understood both the role of counsel and his right to the assistance of counsel. Furthermore, the court reasonably could have relied on the fact that the defendant had been represented by counsel in all pretrial proceedings, through his entry of guilty pleas, in the present case. See *State* v. *Badgett*, supra, 200 Conn. 420–21 n.7 (holding that "[i]t would defy reality to suppose that [the defendant] had any doubts about his continued right to assistance of counsel," when defendant was represented by counsel throughout pretrial proceedings and his plea was "a tactical one and the product of discussion . . . [with] his counsel" (internal quotation marks omitted)). Accordingly, we conclude that the defendant's due process rights are not implicated and no constitutional violation exists. Therefore, the defen-

dant's claim fails under the third prong of *Golding.*

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of victims of family violence, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 64-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." (Internal quotation marks omitted.) *State* v. *Webb*, 62 Conn. App. 805, 807 n.1, 772 A.2d 690 (2001).

[2] For convenience, we have reordered the defendant's claims as they are set forth in his brief.

[3] Although the court noted that the defendant's April 26, 2019 letter indicated that the defendant sought to represent himself, at the May 22, 2019 hearing he requested time to retain a private attorney.

[4] As the state acknowledges in its appellate brief, the defendant raised this claim before the trial court, thereby preserving it.

[5] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (4) [t]he maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences . . . ."

[6] We observe that, although the court's explanation of the defendant's maximum sentence substantially complies with the requirements of Practice Book § 39-19 (4), the best practice is for the court to state the maximum sentence for each individual charge, and then state a total maximum exposure that is the sum of the maximum sentence for each individual charge.

[7] We note that, in order for a defendant to be eligible for special parole, "a definite sentence of more than two years" must be imposed. General Statutes § 54-125e (a).

[8] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (5) [t]he fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made . . . and the right to the assistance of counsel . . . ."